**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Timothy Grills, | ) | CASE NO. 1:14 CV 1307 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Hewlett-Packard Company, | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 14).  This case alleges failure to pay overtime compensation.  For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Timothy Grills filed his Complaint against defendant Hewlett-Packard Company alleging a violation of the Fair Labor Standards Act (FLSA). Plaintiff alleges that defendant failed to pay him overtime compensation at the rate of one and one-half times his regular rate of pay for all of the hours he worked over 40 in a workweek. Plaintiff contends that he has been employed by defendant for 32 years and that in his current position of "Technical Consultant

1

III," defendant misclassified him as "exempt" from the FLSA's overtime requirements.

Evidence before this Court shows the following. Defendant manufactures and sells PCs and printers.  Defendant offers customers technology support services, including network support services.  Plaintiff is employed by defendant as a Technical Solutions Consultant III, also known as a Level II engineer, offering "troubleshooting solutions" to customers who purchase network support services and who contact the customer service center. According to plaintiff's declaration, about 70% of the troubleshooting calls he takes, and 70% of the time he spends troubleshooting customers' problems, are for small to medium sized companies and institutions, and not for customers such as hospitals, large universities, or Fortune 500 corporations.

Plaintiff testified at deposition to the following. The majority of customers calling into the Level II queue are "major companies" and "larger customers" with more complex issues and that have invested millions of dollars in their networks. Plaintiff provides support to customers experiencing network, server, and storage issues, including, for example, "network misconfigurations" and outages.  Plaintiff is viewed as a "technical leader" and provides "expert advice to clients" in highly complex cases. In the Level II group, plaintiff handles "some of the more complex and difficult cases because of the breadth of [his] experience."

Plaintiff has obtained five technical certifications. He achieved ASE and ATP certification as well as Cisco and Avaya certifications.  These certifications involved tests which required "quite a bit of study" in order to pass. Finally, the MASE (Master ASE), is the most complex and highest level exam.  The MASE is a network infrastructure certification which would help plaintiff effectively troubleshoot his client's problems. The MASE certification is not

2

required and plaintiff chose to complete that certification. The MASE certification is not held by all Level II engineers and only MASE certified engineers can troubleshoot calls in the queue involving this system.  Customers "pay money to have a MASE on the phone immediately," and plaintiff is one such certified engineer who has met the "technical and operational excellence and expertise requirements" to pass this exam.

Plaintiff does not perform duties such as manually installing hardware and cables for networks, installing hardware on workstations, configuring desktops, manually checking cables, or manually going to a customer site and replacing hardware. Plaintiff receives his cases through the queue system, generally selecting the cases he wishes to handle, and manages the process to resolution. Because plaintiff's cases are complex in nature, they "take time to close," within two weeks or perhaps longer. Plaintiff generally works from home and is "independent" in the sense that no one tells him how he needs to do his job. Plaintiff's responsibilities include interfacing with customers, gathering data on networking issues, analyzing the data, troubleshooting and testing issues, communicating with the customer, and making proposed solutions and recommendations.

Generally, plaintiff's cases are those which the Level I engineers are unable to resolve. In addition to the queue, plaintiff has several customers who contact him directly "when they have tough issues" because they consider him an expert. Plaintiff uses his discretion as to how to troubleshoot an issue and to recommend a solution.  Plaintiff acknowledges there are no "canned answers" to the problems presented, and he has to be creative, analyze the issue, and come up with a solution.  In fact, although he may refer to a manual, he uses his expert judgment to resolve an issue and determine what tests need to be run to analyze the customer's particular

3

problem in the customer's unique network. Plaintiff decides how he will organize his tasks and what he will do in a particular day. Plaintiff's work significantly affects his customers' businesses.  Given the "major assignments" he handles and the unique nature of each case, plaintiff has discretion in resolving his cases to achieve the "best interests" of his client. Plaintiff spends about 90% of his work time actively troubleshooting network issues for customers.

Plaintiff was selected to be on the "advanced solution team" due to his higher level of skills and expertise.  "Most of the time," the issues that he resolves as part of this team are more complex than the issues faced by the other Level II engineers.  On one occasion,  "because of [his] expertise and ability to handle complex networking issues," plaintiff was selected to go to FedEx to assist with a problem. Plaintiff "had to analyze their network and also their call manager and pretty much rebuild everything."  On another occasion, plaintiff assisted a hospital that had a network outage which plaintiff agreed could have resulted in "dire consequences."

In addition to plaintiff's deposition testimony, Mark Lowenberg, plaintiff's supervisor, testified that cases unable to be resolved by Level II engineers, such as plaintiff, are elevated to Level III and Level IV engineers.

It is not disputed that plaintiff has worked over 40 hours for the weeks during the relevant time period.

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376,

378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material

facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates the
> absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution

will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate

that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip*

*Morris Cos., Inc*., 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on

its pleading, but must "produce evidence that results in a conflict of material fact to be solved by

a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts

must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs.,*

*Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely

colorable" and not "significantly probative," the court may decide the legal issue and grant

5

summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**<u>Discussion</u>**

Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 1/2 times the employees' regular wages. 29 U.S.C. § 207(a). An employer may avoid this requirement with respect to employees properly classified as exempt executives, administrators, or professionals. 29 U.S.C. § 213(a)(1).   The employer bears the burden of proof as to the application of the exemption as well as the burden on each element of the claimed exemption. *Bacon v. Eaton Corp.,* 565 Fed.Appx. 437 (6th Cir. 2014). Here, defendant asserts that plaintiff was properly classified as exempt under the FLSA's computer (professional), administrative, and combination exemptions based on his salary and duties.

Under the FLSA, "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker" is exempt from coverage when his primary duties fall within those enumerated by the Act.  29 U.S.C. § 213(a) (17). According to the Code of Federal Regulations, a computer-related employee ("computer systems analysts, computer programmers, software engineers or other similarly skilled workers in the computer field") earning at least $455 per week and whose primary duties consist of the following "are eligible for exemption as professionals":

> (1) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;
>
> (2) the design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> (3) the design, documentation, testing, creation or modification of computer programs

6

related to machine operating systems; or

(4) a combination of the aforementioned duties, the performance of which requires the same level of skills.

29 CFR § 541.400.  The regulations define "primary duty" as "the principal, main, major, or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700.

It is not disputed that plaintiff's annual salary of $83,736 satisfies the minimum of $455 per week. Plaintiff, however, contends that none of his primary duties fall within the classes of jobs enumerated in (1) through (3) above, and he does not perform a combination of these duties as set forth in (4) above and, therefore, he is not exempt. "At the very least," plaintiff states, there is an issue of fact as to whether his position falls within the computer exemption.

Defendant asserts that plaintiff is exempt because he is a skilled computer professional whose primary duty involves analyzing, testing, documenting, and modifying computer networking systems.  As such, defendant maintains that plaintiff falls within subparagraphs (1) and (2). For the following reasons, this Court agrees.

Noting that applicable 29 CFR  § 541.400 was effective August 23, 2004[1], and that no Sixth Circuit decision is available involving this regulation, defendant points to district court decisions outside this Circuit which found that troubleshooting is exempt under the computer professional exemption provisions where it involved, as plaintiff's duties do here, escalated or

---

[1]     The Complaint herein was filed in 2014 and it is undisputed that the relevant three year statute of limitations would require this Court to look at the years from that date to 2011.Therefore, the current regulations apply.

advanced problem solving, such as analyzing system data or testing to determine the root cause of complex issues and recommending solutions from alternatives.

In *Clarke v. JP Morgan Chase Bank, N.A.,* 2010 WL 1379778 (S.D.N.Y. March 26, 2010), decided on a motion for summary judgment, the plaintiff's FLSA claim failed because he was found to be exempt as a computer employee. The court concluded that the plaintiff's "primary duty" consisted of a combination of the computer functions described in described in subparagraphs (1), (2), and (3) above. The court pointed to plaintiff's technical certifications which enabled him to "solve advanced company-wide support problems and high-level network problems."  Plaintiff responded to incidents that had originated at the help desk but were escalated to his attention if neither the help desk nor an intermediate support team could resolve them. Plaintiff regularly resolved the most serious incidents which involved the highest number of users and the potential for the most financial loss. In doing so, plaintiff would "find the 'root cause' of a problem and then figure out how to address it." Plaintiff had to be "creative" in performing his duties because he encountered issues for which there was no documentation or known solution.

The Court agrees with defendant that, like the plaintiff in *Clark*,  the primary duties of plaintiff herein involve those covered in the subparagraphs above.  Similar to the plaintiff in *Clarke*, plaintiff testified that he regularly handled the most serious and complex issues escalated to the Level II team and which could have had a potential significant impact on the client's business. Plaintiff herein also used his discretion as to how to troubleshoot issues. Acknowledging that there were no "canned answers" to the problems presented, he had to be creative, analyze the issue, determine what tests needed to be run, and recommend a solution.

8

Customers sought him out due to the high level of skill and expertise. Based on plaintiff's deposition testimony, his duties involve the "application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications" as set forth in subparagraph (1) of the regulations. Plaintiff interfaces with customers, gathers data on networking issues, analyzes the data, troubleshoots and tests issues, develops a solution, and communicates the proposed solution to the customer.

In *Curry v. Matividad Medical Center*, 2013 WL 2338110 (N.D.Cal. May 28, 2013), similarly decided on a motion for summary judgment, plaintiff was also found to be an exempt computer employee given that his primary duties included a combination of those enumerated in the statute. The court concluded that plaintiff's duties which included "network analysis, testing, configuration, and modification" had been found by other courts to be the types of duties that characterize exempt computer employees under the FLSA. Plaintiff provided "help desk personnel with escalation support, which entails providing guidance and support to lower level network technicians for user issues exceeding the competency of the lower level technicians." The court noted that like the plaintiffs in other cases found to be exempt, plaintiff was consulted on critical projects and "was more than a help desk staffer and instead was a skilled employee as described under the computer employee exemption."

Again, as demonstrated in the facts, plaintiff herein is responsible for advanced network analysis, testing, configuration, and modification of computer systems on issues exceeding the competencies of lower level technicians. Plaintiff testified that he handled complex cases, ran tests to troubleshoot the issue, determined the "root cause" of the problems, and resolved customer issues which had been elevated to his group. Plaintiff's job duties involved network

9

analysis and on one occasion he assisted a hospital which had a network outage which could have resulted in dire consequences.  In his efforts to fix the outage, plaintiff ran tests in the lab to try to recreate the problem.  Plaintiff was also selected to go onsite to FedEx where he had to analyze their network and "pretty much rebuild everything." Plaintiff testified that he worked with his peer engineers on network configurations and his work involves "misconfiguration issues" and identifying "bugs" in networking hardware and software.  Plaintiff had obtained multiple technical certifications reflecting his high level of competence. On this basis, plaintiff's duties involve, at least, some combination of those enumerated in subparagraphs (1) and (2) above.

Finally, plaintiff testified that he does not perform duties such as manually installing hardware and cables for networks, installing hardware on workstations, configuring desktops, manually checking cables, or manually going to a customer site and replacing hardware.  In *Martin v. Indiana Michigan Power Company,* 381 F.3d 574 (6th Cir. 2004), which applied the earlier regulations[2], the Sixth Circuit determined that plaintiff was not an exempt computer

---

[2]    As stated earlier, the current regulations were effective in 2004. The current exemption in § 213(a)(17) "broadened" the coverage of computer services personnel from that included in the prior computer professional exemption and the regulations "in three significant ways." *Clarke, surpa* (citing *Bobadilla v. MDRC*, 2005 WL 2044938 (S.D.N.Y. Aug.24, 2005). Notably, the current exemption " eliminated the requirement that the employee's work require the exercise of independent judgment and discretion... It also eliminated any reference to educational requirements, and dispensed with the requirement that the employee must have achieved a level of proficiency in the theoretical and practical application of a body of highly specialized knowledge in computer systems analysis, programming, and software engineering."Additionally, the minimum salary requirement was increased from $250 per week. *Id.* (internal quotations omitted).

employee because his duties did not involve (the statute's former requirement) "theoretical and practical application of highly specialized knowledge in computer systems analysis, programming and software engineering." Rather, plaintiff's tasks involved "installing and upgrading hardware and software on workstations, configuring desktops, checking cables, replacing parts, and troubleshooting."  The court found that these duties did not fall within the exemption because "[m]aintaining the computer system within the predetermined parameters does not require 'theoretical and practical application of highly-specialized knowledge in computer systems analysis, programming, and software engineering.' "  The fact that plaintiff herein does not perform these "lower level" duties supports the finding that he is a "skilled worker in the computer field."

Plaintiff does not dispute the facts set forth above, but asserts that "the vast majority of [his] work time is spent acting as a help desk troubleshooter for HP customers who experience problems or issues with their computer network." (Doc. 18 at 4) Plaintiff contends that his primary duties do not fulfill the FSLA's computer exemption because he is not a systems analyst, network designer, or programmer.  Although plaintiff asserts that defendant's citations to district court cases outside this Circuit "should be viewed with caution," he does not address them.  Rather, plaintiff relies on *Hunter v. Sprint Corp.*, 453 F.Supp.2d 44 (D.D.C. 2006) and *Turner v. Human Genome Science, Inc.,* 292 F.Supp2d 738 (D.Md. 2003) (also both notably outside this Circuit), a 2006 United States Department of Labor (DOL) opinion letter, and *Martin, supra*.[3]

---

[3]    As to *Martin,* plaintiff states that defendant "makes no mention of the controlling Sixth Circuit case in this area." But, defendant did refer to the case in a footnote. In its reply, as discussed below, defendant points out that the case was decided

11

In *Hunter*, the court found that plaintiff's job functions did not demonstrate that he fell within the computer professional exemption:

> [Defendant] asserts that [plaintiff's] primary job duties fell within the scope of section 213(a)(17) because [plaintiff] had to analyze problems that were "varied and unique," he had to "interface with the customer or vendor" and conduct tests in trying to solve problems, and he did not follow a manual or have a supervisor watching over his shoulder. The Court cannot agree. The responsibilities described in the computer-professional exemption require a substantially higher degree of skill than what [plaintiff] described in his deposition ... [Plaintiff's] job, based on the evidence presently before the Court, did not involve "determin[ing] hardware, software, or system functional specifications" or the "design, development, documentation, analysis, creation, testing, or modification of computer systems or programs" based on such specifications. Nor did the limited "modifications" he would make to computer software (i.e., uploading code provided by vendors) "relate [ ] to machine operating systems." Rather, it appears that [plaintiff] functioned as a technically proficient help-desk employee whose primary duty was customer service. The mere fact that some of the tasks [plaintiff] performed can be described as "consulting," "analysis," or "testing" relating to computers does not mean that [plaintiff] falls within the ambit of a provision that is designed to exempt computer programmers, network designers, and software developers.

Plaintiff herein asserts that, as in *Hunter*, plaintiff was a technically proficient help desk troubleshooter who assists customers with their network problems and is not a programmer, network designer, or software developer.  As to plaintiff's latter assertion, however, the exemption is not limited to these three job titles as the Act further states, "or other similarly skilled worker" who meets the "primary duty" test outlined therein.  Additionally, the regulations refer to "other similarly skilled workers in the computer field."  As to plaintiff's former assertion, *Hunter* is distinguishable.

In *Hunter,* the court noted that "the only evidence in the record regarding [plaintiff's] job functions comes from [plaintiff's] own deposition- and it is scant at best."  *Id.* at 51.  The court,

---

under the pre-2004 regulations and argues that it is nonetheless factually distinguishable.

12

in discussing the facts, stated that plaintiff was a customer service representative who responded to telephone inquiries from clients having technical difficulties with Sprint's Internet services. He was a second tier responder- addressing concerns which could not be handled by the person fielding the initial call. In that role, plaintiff would attempt to diagnose the source of the problem and assist the client in resolving it. He also updated the employee schedule and provided training to new employees.

Plaintiff asserts that the facts in *Hunter* are "extremely similar" to those in this case.  The Court disagrees.  Here, plaintiff's deposition testimony is far from "scant" and describes plaintiff's consultation with clients to resolve server, storage, and network issues and the various techniques he would utilize to resolve complex issues involving computer and networking systems. Plaintiff also discussed several specific projects wherein he had to resolve complex issues over a period of time.  Although not apparent in *Hunter*, it appears that the plaintiff in that case, who took calls to assist with customers experiencing Internet issues, would have resolved the matter during the phone call.  Plaintiff herein took weeks, or longer, to resolve issues.

*Turner*, decided under the pre-2004 regulations, is also distinguishable.  There, the plaintiffs were systems support technicians who supported defendant's employees by troubleshooting and correcting problems with their computer and phone systems.  Their primary duties included troubleshooting hardware and or software problems and network connectivity issues.  Plaintiffs also installed and set up phones for new employees and those moving offices. In fulfilling these duties, plaintiffs followed a standardized set of procedures that had been created by the vendor of the phone system.

Clearly, the responsibilities of the plaintiff herein involve issues more complex than

13

"network connectivity issues." Moreover, *Turner* applied the administrative exemption, and not the computer professional exemption.

Plaintiff relies on a 2006 DOL opinion which determined that an IT Support Specialist position would not be considered exempt under the statute.  Plaintiff asserts that the duties identified in that position are similar to plaintiff's duties.  Defendant argues that the opinion is not persuasive authority because it does not contain a thorough and comprehensive analysis of the facts relevant to the exemption and does not give a well-reasoned articulation of the bases for the opinion. Additionally, the facts therein are not shown to be substantially similar to those herein.

The opinion involved a proposed new position which would involve duties including:

55% [of time spent]-Analyzes, troubleshoots, and resolves complex problems with business applications, networking, and hardware. Accurately documents all work in appropriate problem tracking software. Prioritizes tasks based on service level agreement criteria with limited supervision.

20% [of time spent]-Installs, configures, and tests upgraded and new business computers and applications based upon user-defined requirements. Assists users in identifying hardware/software needs and provides advice regarding current options, policies, and procedures. Creates and troubleshoots network accounts and other business application user accounts as documented in the employee lifecycle process.

The opinion concluded that the proposed position would not be exempt as a computer professional because the primary duty of the position "consists of installing, configuring, testing, and troubleshooting computer applications, networks, and hardware" which does not involve the duties listed in subparaghs (1), (2), (3), or (4) above. The Court agrees with defendant that because the opinion does not thoroughly analyze the facts, it need not be binding on this Court. Moreover, the Court cannot conclude that the facts are "substantially similar" given that the facts

in the opinion involved a proposed job position whereas the case before this Court involves detailed deposition testimony supporting a description of plaintiff's primary duties.

Finally, plaintiff relies heavily on *Martin v. Indiana Michigan Power Company,* 381 F.3d 574 (6th Cir. 2004), discussed earlier. Plaintiff calls this case the "controlling Sixth Circuit case in this area."  However, as noted above, it applied a former, narrower version of the statute. For the following reasons, the Court finds the case neither "controlling" nor factually similar.

In *Martin,* plaintiff was employed by a power company as an Information Technology (IT) Support Specialist which defendant classified as an exempt position under the FLSA. Plaintiff, along with the IT team, maintained the computer workstation software, and did troubleshooting and repairing.  The computers that plaintiff worked on were workstations ("PCs") at individual desks connected to a local area network ("LAN"). When employees had computer problems, they called the help desk where the help desk employees put the problems into a database as "help desk tickets," which plaintiff printed out.  Plaintiff responded to the help desk tickets by going to the location and attempting to determine the nature of the problem, to "troubleshoot" it to determine how to proceed, and to repair the problem if possible. Plaintiff installed software, such as Microsoft's Office 97, on individual workstations and troubleshooted Windows 95 problems.  He installed " provided software patches."  If plaintiff was unable to fix a problem, he reported it to his supervisor who would then decide whether to request service from the manufacturer or order a replacement part or unit. Plaintiff did not decide or make recommendations as to whether a piece of equipment needed to be serviced or replaced. Nor did he write reports on his troubleshooting or repair activities. Plaintiff also relocated workstations to trailers and temporary buildings. He spent so much time moving workstations that he was not

15

able to carry out his primary job of workstation maintenance during the relevant period.

Additionally, plaintiff was assigned to install hardware and cable for the network, including

network components such as hubs, switches, and routers during an expansion to new buildings.

Plaintiff worked in the wiring closets: terminating the cables (that is, putting connectors on the

ends of the cables), plugging them into the hubs, and verifying that they were connected by

phoning the system administrator to confirm that the hubs had appeared on the network. Plaintiff

was not involved in designing the configuration of either the cables or the hardware he installed,

nor did he install any programs onto the network.  Plaintiff cleaned up "wiring closets." Finally,

after the lawsuit was filed, plaintiff was assigned to "to review a Windows 2000 operating

system" that defendant had just developed.  For this assignment, plaintiff was expected to

"review the desktop operating system in [defendant's] applications to make sure they work as he

uses them in the field. And if not, ..  make recommendations for corrections."  It was noted that

plaintiff had no computer certifications and no degree beyond high school, although he had taken

several computer training classes.

  Applying the regulations in effect at the time, the court stated that to establish plaintiff as

a  "computer professional," defendant had to demonstrate: (1) Plaintiff's  "primary duty consists

of the performance of work that requires theoretical and practical application of

highly-specialized knowledge in computer systems analysis, programming, and software

engineering, and [plaintiff] is employed and engaged in these activities as a computer systems

analyst, computer programmer, software engineer, or other similarly skilled worker in the

computer software field." (2) Plaintiff's  primary duty "includes work requiring the consistent

exercise of discretion and judgment."

16

The court initially noted that although plaintiff was "not a systems analyst, programmer, or software engineer, he could still be exempt from overtime if his work 'requires theoretical and practical application of highly-specialized knowledge in computer systems analysis, programming, and software engineering.' " The court concluded that it did not because

> [Plaintiff] does not do computer programming or software engineering; nor does he perform systems analysis, which involves making actual, analytical decisions about how [defendant's] computer network should function. Rather, [plaintiff's] tasks—installing and upgrading hardware and software on workstations, configuring desktops, checking cables, replacing parts, and troubleshooting Windows problems—are all performed to predetermined specifications in the system design created by others. As [plaintiff] testified, he is provided the standard "desktop" for installation on the computers he configures, but he is not involved in determining what the desktop should look like. [Plaintiff's supervisor] explained ...  that IT Support is "a maintenance organization that takes care of computer systems."

The court stated that there was no evidence that plaintiff "consults with users, to determine hardware, software, or system functional specifications." Instead, he only " 'consults with users' for purposes of repair and user support, not to determine what 'hardware, software, or system functional specifications' the Cook facility will employ, as a systems analyst might."

Additionally, plaintiff's only "testing" was to

> figure out what is wrong with a workstation, printer, or piece of cable so that he can restore it to working order. He is not doing the type of testing that is involved in creating a system, determining the desired settings for a system, or otherwise substantively affecting the system. Indeed, he is merely ensuring that the particular machine is working properly according to the specifications designed and tested by other Cook employees. Maintaining the computer system within the predetermined parameters does not require 'theoretical and practical application of highly-specialized knowledge in computer systems analysis, programming, and software engineering.'

Finally, the court noted that plaintiff's one project that might fall under the category of systems analysis was the Windows 2000 review, but that single project did not make systems analysis plaintiff's primary duty.

17

The Court agrees with defendant herein that plaintiff's duties are distinguishable from those involved in *Martin.*  Plaintiff herein does not perform the manual duties related to the workstations that were described in that case.  In fact, plaintiff there was spending most of his time physically moving workstations to temporary buildings. The plaintiff in *Martin* worked at the help desk fielding calls from employees having computer issues.  If plaintiff could not resolve it, his supervisor took over.  The plaintiff in the case herein handles complex cases escalated to his team.  Nor did the plaintiff in *Martin,* unlike herein, prepare reports on his troubleshooting or repair activities. Exhibits attached herein to this plaintiff's deposition show that he documented extensively the cases he worked on. Plaintiff herein also testified as to how he drafted documents describing the troubleshooting methods he used to resolve an issue. The plaintiff in *Martin* made no recommendations or decisions.  By contrast, plaintiff used his discretion as to how to troubleshoot issues and recommended solutions.  Unlike the plaintiff in *Martin,* the plaintiff herein has obtained multiple technical certifications, one of which, the MASE, reflected a particularly higher level of achievement. Finally, unlike the plaintiff in *Martin,* the plaintiff herein testified as to how he analyzed system upgrades for major clients and, in one case, "pretty much rebuil[t] everything."

In sum, *Martin* is inapplicable because it applied prior regulations[4] and the facts are distinguishable.  Moreover, other district courts, discussed above, have found those with duties more similar to plaintiff's to fall within the computer employee exemption. Plaintiff does not

---

[4]    The Court recognizes that the four subparagraphs of the regulations and the statute, which describe the primary duties, are the same under the prior and current regulations.

attempt to distinguish those cases. *See Clarke* and *Curry*, above.[5]  Additionally, *Young v. Cerner Corporation,* 2007 WL 2463205 (W.D. Missouri August 28, 2007), is more similar than *Martin* to the case herein where the court found a plaintiff exempt under the computer professional exemption where her primary duties involved "defect analysis" in which she determined "how to fix a defect" and then fixed it.  She "did more than just follow instructions; although she might have been given some direction, ultimately her job was to apply some of her own analysis and judgment in resolving defects."

     For these reasons, the Court finds plaintiff was properly classified as exempt under the computer employee exemption. Because the Court finds plaintiff to be exempt under the computer employee exemption, the Court need not address the administrative exemption or combination thereof.  *See Bernard v. Group Publishing, Inc.,* 970 F.Supp.2d 1206 (D.Col. 2013) ("Because the Court concludes that Plaintiff was properly classified as an exempt employee pursuant to the administrative exemption, the Court will not address Defendant's argument regarding the computer professional exemption.")

     **<u>Conclusion</u>**

     For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

---

[5]     In fact, the *Clarke* court pointed out that *Martin* "was decided under the narrower computer professional exemption."  *Clarke* also distinguished the plaintiff's duties in *Martin* as involving "classic help desk functions...consist[ing] of responding to helpdesk tickets, installing software such as Windows Office 97 on individual workstations, troubleshooting Windows 95 problems, configuring desktops, checking cables, and replacing parts." *Id.* (internal quotations omitted)

IT IS SO ORDERED.


Dated: 8/24/15                    /s/ Patricia A. Gaughan
                                 PATRICIA A. GAUGHAN
                                 United States District Judge